IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHILIP APSEY, ) CASE NO. 1:12 CV 2551
 )
      Plaintiff, )
 ) MAGISTRATE JUDGE
v. ) WILLIAM H. BAUGHMAN, JR.
 )
CHESTER TOWNSHIP, *et al.*, )
 ) **MEMORANDUM OPINION**
      Defendants. ) **AND ORDER**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
      A.    Before the arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
      B.    The arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
      C.    The prosecution and guilty plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
      D.    Apsey's claims in the complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
      A.    Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
      B.    Municipal liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
            1.    Legal standard for municipal liability . . . . . . . . . . . . . . . . . . . . . -7-
            2.    Legal standard for municipal liability as applied to Chester
                Township . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
      C.    Supervisor's liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
            1.    Legal standard for *respondeat superior* liability of a supervisor . -9-
            2.    Legal standard for *respondeat superior* as applied to Chief Purchase
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
      D.    Liability of "complainant" defendants . . . . . . . . . . . . . . . . . . . . . . . . . -10-
            1.    Legal standard for liability of complainants and witnesses . . . . -10-
            2.    Legal standard applied to Moleterno . . . . . . . . . . . . . . . . . . . . -11-
            3.    Legal standard applied to Marzano . . . . . . . . . . . . . . . . . . . . . -12-
      E.    Liability of arresting officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
            1.    Arrest without probable cause/false arrest . . . . . . . . . . . . . . . . -13-
                a.    Legal standard for unconstitutional arrest without probable
                    cause and false arrest . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
                b.    Legal standard as applied to Brickman and Pocek . . . . -15-

   2. Malicious prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
     a. Legal standard for malicious prosecution  . . . . . . . . . . . . -16-
     b. Legal standard as applied to Brickman and Pocek  . . . . . -17-
 F. The state law civil conspiracy claim . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

## Introduction

Plaintiff Philip Apsey has brought this case alleging violations of his federal constitutional rights in connection with his July 13, 2010 arrest for a traffic violation.[1] This Court[2] has jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the related, state-law claim under 28 U.S.C. § 1367. Apsey brings this case against multiple defendants:

- Chester Township, whose police officers arrested him;

- Chief Mark A. Purchase, Chester Township's chief of police;

- Police officers Matthew Brickman and Todd Pocek, the arresting officers;

- Police Officers Jamie Romph and Robert Tropf, who have been dismissed from the case;[3]

---

[1] ECF # 1.

[2] ECF #27, The parties consented to this case being transferred to the docket of Magistrate Judge William H. Baughman, Jr.

[3] Apsey voluntarily dismissed Defendants Romph and Tropf under Rule 41 of the Federal Rules of Civil Procedure. ECF #s 26 and 32.

- Assistant Fire Chief Karen Moleterno, who reported possible illegal activity to police; and

- Darlene M. Marzano, Apsey's ex-wife.[4]

The defendants that remain in the case have filed motions for summary judgment.[5] Apsey has opposed the defendants' motions,[6] and the defendants have replied.[7] As fully discussed below, I will grant the motions of Chester Township, Chief Purchase, Moleterno, and Marzano as to the federal law claims; deny the motions of Brickman and Pocek as to the federal claims for arrest without probable cause, false arrest, and malicious prosecution; and stay the remaining state law claim pending disposition of the remaining federal claims.

---

[4] Both sides have stated that Apsey and Marzano filed for divorce on April 20, 2010. It is unclear based on the facts presented whether the divorce was finalized, but for purposes of this opinion, I will refer to Marzano as Apsey's ex-wife. ECF # 50 at 2.

[5] ECF #s 42 (Karen Moleterno), 43 (Matthew Brickman, Chester Township, Todd Pocek, and Mark A. Purchase), 46 (Darlene Marzano).

[6] ECF # 50 (Apsey's opposition to ECF # 43 motion for summary judgment), 51 (Apsey's opposition to ECF # 42 motion for summary judgment), 52 (Apsey's opposition to ECF # 46 motion for summary judgment).

[7] ECF # 53 (reply to response ECF # 42 motion for summary judgment filed by Karen Moleterno), 54 (reply to response ECF # 43 motion for summary judgment filed by Matthew Brickman, Chester Township, Todd Pocek, Mark A. Purchase), 55 (reply to response ECF # 46 motion for summary judgment filed by Darlene M. Marzano).

**Facts**

**A.     Before the arrest**

This case arises out of events in July of 2010. Although both sides relate substantially similar versions of the relevant facts,[8] some differences exist. In those instances, I will present the version of each side.

Moleterno, the assistant fire chief[9] and friend of plaintiff's ex-wife,[10] made a report to the police that she suspected Apsey would violate his driving privileges by taking his son to day camp.[11] When Apsey arrived at the corner of Route 306 and Cedar Road that morning, two police cruisers waited in the vicinity based on Moleterno's tip.[12]

---

[8] The parties each present a significant amount of facts not relevant to the present motion that are not discussed here.

[9] ECF # 42 at 2.

[10] ECF # 1 at 3. Marzano and Apsey filed for divorce in May of 2010. The fact that defendants Marzano and Moleterno are cousins is found in ECF # 46 at 8.

[11] ECF # 42 at 3. Moleterno made her report to Detective Pomnean, who is not a defendant in this case. Apsey maintains that he was on his way to a work site to complete an estimate for a job and planned to meet Marzano later that day so she could drop their son at day camp. ECF # 1 at 4-5.

[12] *Id.* at 4. There is some dispute as to which police officers were dispatched to the scene. Detective Pomnean states he sent both Brickman and Pocek to the scene (P.App. 217-18, Pomnean Deposition, p. 32). Brickman denies that Pocek was sent with him to surveil Apsey, and Pocek recalls being present at the scene but is unsure about when he was dispatched. ECF # 50 at 9. Regardless of who sent Pocek to the scene and when, he admitted to being present for the arrest, and that is all that is relevant here.

**B.     The arrest**

In his deposition, Brickman testified that he observed Apsey's car going left of the center line, and so he pulled him over.[13] Apsey denies this.[14] After a series of events not relevant here,[15] Apsey was arrested and subsequently charged with lanes of travel, driving under suspension, and obstruction of official business violations.[16]

**C.     The prosecution and guilty plea**

Before trial the prosecutor dropped the charges for driving under suspension and obstruction of official business for "insufficient evidence to prosecute."[17] Apsey pled guilty to the violating lanes of travel moving violation and paid a $150.00 fine.[18]

**D.     Apsey's claims in the complaint**

In his complaint[19] Apsey raised the following claims:

---

[13] ECF # 42 at 3 (citing Brickman Deposition p. 35, lines 10-11).

[14] ECF # 50 at 9.

[15] Events after the initial arrest including issues regarding specific driving privileges and the police accompanying Apsey to the alleged job site are not deemed relevant to this opinion.

[16] ECF # 1 at 5.

[17] *Id.*

[18] ECF # 50 at 19.

[19] ECF # 1.

- Arrest without probable cause in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments;[20]

- False arrest without probable cause in violation of the Fourth and Fourteenth Amendments;[21]

- Malicious prosecution in violation of the Fourth and Fourteenth Amendments;[22]

- Liability of Chester Township under 42 U.S.C. § 1983 because of actions of its employees under official policies, customs, or practices that deprived Apsey of his rights under the Fourth and Fourteenth Amendments;[23]

- Liability of Chester Township under 42 U.S.C. § 1983 because Chief Purchase's ratification of the acts of the subordinate police officers deprived Apsey of his rights; and

- A state law claim for civil conspiracy.[24]

---

[20] *Id.* at 7.

[21] *Id.* at 8.

[22] *Id.* at 9. In Apsey's response to the summary judgment motion by defendants in ECF # 50 at 20, he also cites the elements required for a separate state law claim of malicious prosecution. The attempted amendment to the complaint did not comply with procedures under Federal Rule of Civil Procedure 15. Furthermore, as held by the Sixth Circuit, the court would not abuse its discretion to deny an amended complaint when it was made informally in a brief. *D.E.&J. Limited Partnership v. Conaway*, 133 F. App'x 994, 1001 (6th Cir. 2005). Therefore, this Court is within its discretion to ignore the state law claim of malicious prosecution that Apsey addressed in his response to the motions for summary judgment.

[23] *Id.* at 10.

[24] *Id.* at 11.

## Analysis

**A.     Overview**

The various claims here involve both state and federal law, as applied to Chester Township, employees of the Township, and private citizens. I will first address the federal claims of *respondeat superior* municipal liability directed against Chester Township. Next I will discuss *respondeat superior* liability as claimed against Chief Purchase as the supervisor of officers Brickman and Pocek. I will then turn to the claims made against Moleterno and Marzano as complainants whose statements allegedly promoted Apsey's arrest. Finally, I will address the claims against the arresting police officers.

**B.     Municipal liability**

*1.     Legal standard for municipal liability*

In a § 1983 action, a municipality may not be held liable under the theory of *respondeat superior* for the actions of its employees.[25] Rather, a plaintiff seeking to establish municipal liability under § 1983 must ground the liability in "conduct properly attributable to the municipality itself."[26] Specifically, in order for liability to attach, a § 1983 plaintiff must show that a municipality engaged in a "'policy or custom'" that was "'the moving force'" behind the deprivation of the plaintiff's rights.[27] In that regard, a municipal "policy"

---

[25] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[26] *Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

[27] *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 694).

is an officially adopted and promulgated statement, ordinance, regulation, or decision, where, by contrast, a municipal "custom" has not received formal approval through official channels but exists where officials know about and acquiesce in the practice at issue.[28]

Where the claim involves a municipal "custom," the plaintiff must prove:

> (1) the existence of a clear and persistent pattern of violating federal rights ...; (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the "moving force," or direct causal link for the constitutional deprivation.[29]

### *2.    Legal standard for municipal liability as applied to Chester Township*

Apsey has failed to establish any genuine issue of material fact as to a municipal policy or custom that would attach liability to Chester Township. The Sixth Circuit in *Thomas v. Chattanooga* established that the presence of a constitutionally infirm policy or custom cannot be made out by evidence of a single instance of constitutionally defective conduct.[30] Thus, even if the present claim alleged constitutionally defective conduct, there is no proof of a "clear, persistent pattern" of illegal conduct necessary to maintain this action. Rather, Apsey's claim rests on evidence of a single incident of misconduct insufficient to sustain a claim of improper custom or policy. Furthermore, there is no evidence in the record that Chester Township was on notice of any pattern of improper conduct or that there was

---

[28] *Powers*, 501 F.3d at 607 (citations omitted).

[29] *Id.* (citations omitted).

[30] *Thomas v. Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005).

deliberate indifference in the face of such notice. Without any established defective policy, custom, or pattern of conduct, therefore, I will grant Chester Township summary judgment on all claims against it included in counts one, two, three, five, and six.

**C.     Supervisor's liability**

*1.     Legal standard for respondeat superior liability of a supervisor*

Supervisory officers are not liable under *respondeat superior* unless they are on the scene and directly involved in the acts giving rise to the suit.[31] Supervisory liability exists only when the supervisor encouraged the specific incident of misconduct, directly participated in the conduct, authorized the conduct, or acquiesced in it.[32] Under the legal standard for summary judgment in Federal Rule of Civil Procedure 56(e), the nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury."[33]

*2.     Legal standard for respondeat superior as applied to Chief Purchase*

Chief Purchase was not on the scene the day of the arrest. There is no evidence put forth in affidavits or otherwise to suggest he had any direct role in the arrest. Detective

---

[31] *Crawford v. Geiger*, No. 3:13C1883, 2014 WL 554469, at *6 (N.D. Ohio Feb. 10, 2014), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).

[32] *McConnell v. Naphcare, Inc.*, No. 3:13CV34, 2013 WL 4832785, at *3 (S.D. Ohio Sept. 10, 2013); *Brothers v. Summit County*, No. 5:03CV1002, 2007 WL 1567662, at *11 (N.D. Ohio May 25, 2007).

[33] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir.1995).

Pomnean, not Chief Purchase, dispatched the arresting officers.[34] Apsey has not offered any evidence of Chief Purchase's actions or inactions before the arrest that would support supervisor's liability.

As to post-arrest, the only evidence Apsey provides is Chief Purchase's statement in his deposition that he signed off on Brickman's report.[35] Chief Purchase admits he checked the report for proper protocol, *i.e.* to make sure everything was included that was needed for the prosecutor, such as what charges were attached to the report.[36] There is no evidence that Chief Purchase had any knowledge or even suspicion that the report was inaccurate or false.[37] Chief Purchase is entitled to summary judgment.

**D.     Liability of "complainant" defendants**

*1.     Legal standard for liability of complainants and witnesses*

To state a claim under 42 U.S.C. § 1983, the plaintiff must show a deprivation of a right secured by the constitution or federal law under color of state law.[38] This

---

[34] ECF # 51 at 9. Citing Pomnean deposition pp. 33-34.

[35] ECF # 49-2, Purchase Deposition, p. 15. The Chief acknowledging his signature on the police report.

[36] ECF # 49-2, Purchase Deposition, p. 14.

[37] Apsey also argues that Chief Purchase's authorizing Brickman to write a supplemental report for Marzano's attorney makes him liable in this action. In his deposition, Chief Purchase testified that he authorized the supplemental report as simply a cost efficiency decision, as it was cheaper to have the officer write a two paragraph addendum than having to pay him overtime to appear in court under a subpoena. *Id.* at 33. There is no evidence that he had any knowledge of false information in the supplemental report.

[38] *Am Mfg. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

under-color-of-state-law requirement cannot be satisfied by private conduct, no matter how discriminatory or wrongful.[39] That an individual defendant was a complainant or witness in an action prosecuted under color of state law does not make the complaining or testifying state action, or the complainant or witness a state actor under § 1983.[40]

### 2.     *Legal standard applied to Moleterno*

Moleterno was named in Apsey's first, third, fourth, and fifth counts. Moleterno reported suspicions that Apsey may be violating the law to the police.[41] Apsey here alleges that Moleterno's acts violated his Fourth and Fourteenth Amendment rights when he was arrested without probable cause.[42] Moleterno's report related a suspicion that Apsey would be driving in violation of restrictions.[43] Although Moleterno is employed by the Chester Township Fire Department, she had no authority to direct or control Brickman's actions

---

[39] *Id.* at 50.

[40] *E.g.*, *Collins v. Clancy*, No. 1:12CV152, 2014 WL 1653103, at *5 (S.D. Ohio Apr. 23, 2014); *Clements v. Brimfield Twp.*, No. 1:12CV1180, 2012 WL 5507305, at *9 (N.D. Ohio Nov. 14, 2012); *Snell v. Village of Bellville*, No. 1:11CV1744, 2011 WL 5361120, at *5 (N.D. Ohio Oct. 28, 2011); *Anderson v. Amawi*, 1:10CV1737, 2010 WL 5067426, at *2 (N.D. Ohio Dec. 6, 2010); *Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 573 (N.D. Ohio 2004).

[41] ECF # 42 at 3.

[42] ECF # 1 at 7.

[43] ECF # 42 at 3.

during the arrest of Apsey.[44] The parties have stipulated that Moleterno had no control over the police officers in her capacity with the fire department and had no control over the arrest of Apsey and subsequent charges.[45]

Moleterno's conduct amounts to no more than the lodging of a complaint with police about possible illegal conduct. Her employment with the fire department is incidental and irrelevant. Apsey has brought forward no evidence that she acted in any official capacity or that she made a complaint (more appropriate a "tip") in the course and scope of her duties with the fire department. She is not a "state actor" under § 1983, and I will grant summary judgment on the claims asserted against her.

### *3.  Legal standard applied to Marzano*

Marzano was named in Apsey's first count for acting under color of state law to deprive plaintiff of constitutionally protected rights.[46] Marzano is, as Apsey stipulates, simply a resident of Chester Township.[47] There is no evidence that Marzano contacted the police before the arrest. But assuming arguendo that Moleterno's tip to police could be construed

---

[44] ECF # 43 at 4 (citing Purchase Deposition, p. 5-6, DAppIA. 5-6). Moleterno reaffirmed that she had no control over Brickman's decision to pull over Apsey. ECF # 42 at 7.

[45] ECF # 39 at 2.

[46] ECF # 1 at 8. Marzano is not listed in the heading of Apsey's first count, but her name is listed within the description of Apsey's first count when he states: "Defendant Marzano unlawfully and without probable cause directed the police officers to arrest Plaintiff and file formal criminal proceedings against Plaintiff based upon the unlawful seizure and arrest."

[47] *Id.* at 2.

as a complaint, she is merely a resident and not a state actor for purposes of § 1983. I will also grant Marzano summary judgment.

**E.  Liability of arresting officers**

*1.  Arrest without probable cause/false arrest*

*a.  Legal standard for unconstitutional arrest without probable cause and false arrest*

An arrest made without probable cause violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983.[48] For a police officer to have probable cause for an arrest there must exist "facts and circumstances within the officer's knowledge sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit a crime."[49] Thus, probable cause "requires only the probability of criminal activity, not some kind of 'prima facie' showing of such activity."[50]

Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[51] Accordingly, a determination of probable cause "involve[s] an examination of all facts and circumstances within an officer's

---

[48] *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

[49] *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *accord*, *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997).

[50] *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

[51] *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

knowledge at the time of arrest."[52] This standard is purely objective and depends solely "upon the reasonable conclusion to be drawn from the facts known by the arresting officer at the time of the arrest."[53] Thus, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."[54]

The facts establishing probable cause for an arrest need not be "closely related to," or based on, the reason for the arrest given by the arresting officer at the time.[55] As the Sixth Circuit stated in *United States v. Harness*,[56] "the Supreme Court has explained, however, [that] an arresting officer's 'subjective reasons for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'"[57] Stated differently, "knowledge of *the precise* crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that *a* crime was committed by the defendants."[58]

---

[52] *Gardenhire*, 205 F.3d at 315 (internal citations omitted).

[53] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

[54] *Id.*

[55] *Id.* at 153-54; *United States v. Abdi*, 463 F.3d 547, 559 (6th Cir. 2006).

[56] *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006).

[57] *Id.* (quoting *Devenpeck*, 543 U.S. 146 at 153).

[58] *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) (emphasis added).

*b.     Legal standard as applied to Brickman and Pocek*

Apsey's first and second counts alleging false arrest in violation of federal constitutional rights rest on the premise that Brickman and Pocek arrested him without probable cause.[59] Whether probable cause existed for the moving violation is a disputed genuine issue of material fact. Brickman stated in his deposition that he observed Apsey's car drift left of the center line.[60] Apsey denies crossing the solid yellow line.[61]

The trier of fact must resolve this material fact conflict. If probable cause exists for the moving violation, this probable cause would also justify Apsey's subsequent arrest according to the standard stated above that probable cause to believe that a person has committed *any* crime will preclude an unlawful arrest claim. If the jury finds probable cause for the moving violation, Apsey's false arrest without probable cause claims fail. But if a jury should believe Apsey's version of the facts, the predicate for liability exists. Since the issue of probable cause cannot be decided as a matter of law here, and remains a genuine issue of material fact, I will deny Brickman and Pocek summary judgment on the false arrest without probable cause claims.

---

[59] ECF # 1 at 7.

[60] ECF # 44, Appendix at 6 citing (Brickman Deposition, p. 35, DAppI. 47).

[61] ECF # 50 at 9.

### *2.    Malicious prosecution*

*a.    Legal standard for malicious prosecution*

To establish malicious prosecution under federal law, a plaintiff must prove four elements.[62] First, a plaintiff must demonstrate "that a criminal prosecution was initiated against the plaintiff and the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'"[63] For an officer to "participate" in the decision to prosecute, the officer must "participate in a way that aids in the decision, as opposed to passively or neutrally participating."[64]

The second element a plaintiff must prove is that, because a § 1983 action is based on violation of a constitutional right, there was a lack of probable cause for the criminal prosecution.[65]

The third element a plaintiff must demonstrate is that, "as a consequence of a legal proceeding, the plaintiff suffered a 'deprivation of liberty.'"[66]

---

[62] *Peña v. City of Toledo*, No. 3:10CV344, 2011 WL 4565786, *5 (N.D. Ohio Sept. 29, 2011).

[63] *Id.*, citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

[64] *Id.*

[65] *Id.*

[66] *Peña*, 2011 WL 4565786, at *6. citing *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007).

The fourth element for a malicious prosecution claim is that the criminal proceeding must have been resolved in the plaintiff's favor.[67]

### b. *Legal standard as applied to Brickman and Pocek*

Apsey satisfies the first element for a claim of malicious prosecution. In *Peña v. City of Toledo*,[68] the court found that when the decision to prosecute was predicated on an officer's arrest of a plaintiff, it satisfied the first element. In that case the arresting officer's actions in arresting the plaintiff and filing a complaint satisfied the first element as they "sufficiently influenced or participated in the decision to prosecute even though they did not make the ultimate decision."[69] In this case, both Brickman and Pocek arrested Apsey after allegedly seeing him cross the yellow center line, prompting his subsequent prosecution for a moving violation. Thus their actions are analogous to the situation in *Peña*, and they satisfy the first prong under malicious prosecution liability.

For the second element of a malicious prosecution claim, a lack of probable cause, it remains undecided if Apsey can prevail. As discussed above, there is a genuine issue of material fact that must be determined by a jury. Once probable cause is either proved or disproved, the malicious prosecution claim can either proceed or fail depending on the result.

---

[67] *Id.*, citing (*Heck v. Humphrey*, 512 U.S. 477 (1994)).

[68] *Peña*, 2011 WL 4565786, at *5.

[69] *Id.*, at *6.

-17-

Both the third and fourth elements of malicious prosecution liability also exist here. Apsey satisfies the third element of a malicious prosecution claim, deprivation of liberty, because of his arrest.

The fourth element of malicious prosecution, the favorable termination requirement, also resolves in Apsey's favor. In *Powers v. Hamilton County Public Defender Commission,* the Sixth Circuit observed that when a state conviction results in only a fine or a short prison sentence, the malicious prosecution plaintiff does not have the opportunity to test the constitutionality of that conviction through a petition for habeas corpus;[70] the requirement that maintaining a §1983 action depends on first obtaining favorable termination of state criminal proceedings would not apply. Here, Apsey's guilty plea for a minor misdemeanor carried the penalty of a fine and not imprisonment,[71] and so habeas relief was not available. Under the teaching of *Powers*, as applied to the facts in this matter, Apsey's malicious prosecution claim cannot be barred by his conviction on the underlying misdemeanor claim.

---

[70] *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 603 (6th Cir. 2007). "Powers was fined for his reckless-driving misdemeanor and then imprisoned for at least one, but not more than thirty, days for his failure to pay the fine. Under these circumstances, there is no way that Powers could have obtained habeas review of his incarceration. This is precisely the kind of situation that Justice Souter had in mind when he argued in *Heck* and *Spencer* that the favorable-termination requirement could not be deployed to foreclose federal review of asserted deprivations of federal rights by habeas-ineligible plaintiffs."

[71] ECF # 50 at 19. Violation of Lanes of Travel is a minor misdemeanor. R.C. 4511.25(D). The conviction penalties for a minor misdemeanor moving violation are a $150.00 fine and a two-point assessment on the person's driving record.

As Apsey has satisfied the first, third, and fourth elements for a malicious prosecution claim, the only issue remaining is the probable cause element. If the jury finds that no probable cause existed, then Apsey can go forward with his malicious prosecution claim. If, however, the jury finds that there was probable cause for the arrest, then Apsey's malicious prosecution claim must also fail.

**F.      The state law civil conspiracy claim**

The court will stay consideration of the state law claim in count seven pending disposition of the remaining federal claims through trial.

## Conclusion

I grant summary judgment to all defendants, with the exception of arresting officers Brickman and Pocek, on all federal claims asserted in Apsey's complaint.

I deny the motions for summary judgment of Brickman and Pocek as to the federal claims in the complaint for arrest without probable cause, false arrest, and malicious prosecution. A genuine issue of material fact exists relevant to each of those claims as to probable cause for Apsey's arrest, which must be resolved at trial by a jury.

Finally, I stay proceedings on Apsey's state law civil conspiracy claims pending resolution of the remaining federal claims.

IT IS SO ORDERED.

Dated:  August 8, 2014                                       s/ William H. Baughman, Jr.
                                                             United States Magistrate Judge